UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:22cr33 (OAW) |
| | : | |
| v. | : | |
| | : | |
| JOHN BERNARDO | : | January 31, 2023 |

## GOVERNMENT'S SENTENCING MEMORANDUM

### Introduction

During the pandemic, John Bernardo conspired with Michael DiMassa to steal money from the citizens of West Haven that was designated for COVID relief. He should be sentenced to a term of incarceration within the applicable Guideline range.

### Procedural History

On June 14, 2022 the defendant pleaded guilty to one count of conspiracy to commit wire fraud. In the plea agreement, the parties agreed that the defendant's base offense level under U.S.S.G. § 2B1.1 is seven and 14 levels are added because the loss exceeded $550,000.

After subtracting three levels for acceptance of responsibility, the final offense level is 18. With a CHC of I, the defendant is exposed to term of incarceration of 27-33 months and a fine $10,000 to $100,000.

The defendant now argues that he is a minimal or minor participant in the conspiracy and thus should receive a lesser sentence. *See* Def's Sentencing Memo

at 1 (Doc 157). Further, he argues that a downward departure is warranted based on his age and medical condition. *Id.* at 4.

The government believes that the defendant is neither a minor participant in the wire fraud conspiracy nor do his circumstances meet the standard for a downward departure. Thus, Court must determine what is a fair and just sentence under 18 U.S.C. § 3553(a). For the reasons stated below, the government believes a sentence of incarceration within the applicable Guideline range is warranted in this case.

Sentencing is scheduled for March 22, 2023 at 10:00 am.

## Restitution

The defendant personally received $48,927.25 from the conspiracy with DiMassa involving Compass Investments. The remainder was taken by DiMassa. In addition, DiMassa indicated that Bernardo received approximately 10K in cash from Mr. Trasacco as a kickback for facilitating the fraud. Thus, the Court should issue an order of restitution for $58,927.25.

To date, the defendant has not paid any restitution, although his attorney has discussed the mechanics of refinancing the defendant's house with government counsel.

## Offense Conduct

In early 2021, the defendant was employed by West Haven as a Housing Specialist in the Office of Community Development. PSR ¶ 9. During that time, West Haven received over a million dollars in Covid relief funds to help that

municipality cope with the ongoing pandemic. DiMassa and the defendant worked together to steal a significant portion of that money.

On January 27, 2021, the defendant and Michael DiMassa formed Compass Investment Group, LLC. They were the only two principals of the company. Bernardo's home address was listed as the business address. His home address was also listed on the bank account for Compass and both he and DiMassa were listed as authorized signatories. Compass had no business purpose and was created solely to defraud West Haven.

DiMassa had received authority to approve expenditures of West Haven's Covid relief funds. He submitted requests for payment to the City of West Haven for services by Compass Investment Group, when no such services were provided. The requests listed alleged services such as COVID-19 Legal + Lobbying + Site work for COVID-19 Clinic, Consulting Service-Legislative Review Executive Orders – COVID-19, Consulting Service-Support Staff Services, Monitors/Security Site (April 2021-May 2021), and Consulting Service Lobbying Service – COVID-19 Federal.

These requests for payment caused the City of West Haven to issue checks to Compass Investment Group. In total, the City of West Haven issued thirteen checks totaling $636,783.70 to Compass Investment Group even though it received none of the services described on the invoices.

In an apparent effort to make Compass Investments appear to be a legitimate company, the defendant arranged for some of the proceeds to be issued as fraudulent paychecks and transferred to a retirement account for his benefit. PSR ¶ 14. In all,

he deposited over $48,000 into his accounts.

In addition to the fraud involving Compass Investments, DiMassa engaged in other schemes to defraud West Haven of Covid relief funds. One involved John Trasacco. The defendant introduced John Trasacco to DiMassa at a cigar shop. The three of them often frequented Doma restaurant in Branford. While at Doma, Trasacco kicked back a portion of the proceeds he and DiMassa stole from West Haven's Covid funds, believed to be a total of $10,000, in cash to Bernardo on two occasions.

Further, Bernardo played a role in the evolution of DiMassa's schemes involving Trasacco. At one point, Trasacco, Dimassa and the defendant met to discuss a new scheme in which Trasacco would bill West Haven for Covid cleaning services by allegedly using an ultraviolet light. They agreed to a 40/40/40 split of the money, meaning each of the three of them would receive 40K from the fraud, with additional amount being given to Trasacco. The next day, Trasacco sent DiMassa an invoice for about $184,000, which was eventually submitted to West Haven. The check for 184K was issued by West Haven and was cashed by Trasacco. Shortly thereafter, DiMassa and Bernardo were arrested. It does not appear as if Trasacco ever gave either of them any of the proceeds from that fraud.

## The Defendant was Not a Minor Participant

The defendant argues that he deserves a reduction for minor role because he received less money from the Compass Investments scheme than DiMassa. But that ignores the fact that the defendant's participation was essential for the operation of

4

the scheme. His address was the official corporate address for Compass Investments. He was a principal in the fictious company that had no business purpose and produced nothing. His home served as the mailing address for the fake company's bank account. He was involved in setting up the fake payroll and retirement accounts using the stolen Covid money. He routinely met with both DiMassa and Trasacco at Doma. The defendant was involved in planning to steal Covid money from West Haven via the UV light scheme and was slated to receive $40,000.

Indeed, when the federal investigation went overt, the defendant communicated directly with both DiMassa and Trasacco in order to discuss the involvement of law enforcement. On October 7, 2021, Bernardo and DiMassa called Trasacco using Bernardo's phone to report the federal investigators were in West Haven City Hall and, according to DiMassa, "the jig was up." Both left City Hall that day.

Further, call records indicate that on October 8, 2021 (the following day), Bernardo's and Trasacco's phones had 8 separate contacts, for a total of 94 minutes. One call lasted 41 minutes. On October 9, 2021, the phones had three sperate contacts for a total of 91 minutes, with two different calls each lasting 45 minutes. This significant amount of interaction at a critical juncture with another individual who was also stealing money from West Haven does not support the defendant's contention that he was a minor player.

## A Departure is not Warranted under U.S.S.G. §§ 5H1.1 or 5H1.4

Section 5H1.1 specifically states "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally as effective and less costly than incarceration."  This simply does not apply to this case.  The defendant does not allege that he is infirm –he routinely had drinks with both Trasacco and DiMassa at both a cigar shop and the bar at a restaurant.   Until the time of his arrest, he worked full time for West Haven.   And, as discussed below, given the seriousness nature of this theft of city funds by a city employee, home confinement would not be just punishment under § 3553(a).

Further § 5H1.4 indicates that "[a]n extraordinary physical impairment may be reason to depart downward; e.g. in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than imprisonment."   Facts to support such a departure are simply not present in this case.

## Analysis of the § 3553(a) Factors

Section 3553(a) directs the district court to consider a number of factors in imposing a fair and just sentence.   Each criminal case is different and emphasizes different combinations of § 3553(a) factors.   In this matter, the government believes the most important § 3553(a) factors are the (1) the specific nature and circumstances of the offense, (2) promoting respect for the law; (3) just punishment and (4) general deterrence.

## The Nature and Circumstances of the Offense

The defendant's crime constitutes of a serious offense. The defendant, a municipal employee, stole city money. But what makes this crime even more serious is that the money was designed to help residents cope with a pervasive pandemic. Funds that should have been used to set up testing clinics or provide PPE was used by the defendant for his personal pleasure. He frequented both a cigar bar and a restaurant. He took some of the money and set up a retirement account for himself. A Guideline sentence of incarceration is warranted.

## The Sentence Must Promote Respect for the Law, Provide Just Punishment and Offer General Deterrence

The sentence in this case must promote respect for the law. Simply put, a municipal employee who steals a significant amount of public funds should go to jail. And considering the funds were specifically earmarked to address an ongoing historic pandemic, a significant period of incarceration is particularly warranted to promote respect for the law and provide just punishment.

Additionally, the Court should consider general deterrence. In essence, this was a crime committed by an employee who purposefully and repeatedly exploited shortcomings in West Haven's financial management system to steal public money. A sentence of incarceration will serve to inform others who contemplate similar crimes – that is fraud by public employees against the people they are employed to serve – that such actions will result a felony conviction and a significant term of incarceration.

## Conclusion

After considering the Sentencing Guidelines and the other sentencing factors under 18 U.S.C. § 3553(a), the Court should impose a term of incarceration within the applicable Guideline range and order the defendant to pay $58,927.25 in restitution.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

/s

RAY MILLER
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT 20451
157 CHURCH STREET, 23RD FLOOR
NEW HAVEN, CT 06510
(203) 821-3700

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 31, 2023 a copy of the foregoing Memorandum was filed electronically.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s

Ray Miller
Assistant U.S. Attorney